**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**at PIKEVILLE**

**CIVIL ACTION NO. 06-106-DLB**

**KENNETH MULLINS**                                                                                   **PLAINTIFF**

**vs.**                             **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Kenneth R. Mullins filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) payments on August 29, 2003. (Tr. 96-98, 132-35). Plaintiff alleges he became unable to work on August 9, 2003, due to residual pain from a broken back and due to depression. (Tr. 106-12, 122-25, 129). His claims were denied initially and on reconsideration. (Tr. 77-80, 82-84; 136-39, 142-44). At Plaintiff's request, an administrative hearing was conducted on February 7, 2005, by Administrative Law Judge (ALJ) Andrew J. Chwalibog. (Tr. 48-65). Post-hearing consultative examinations were ordered by the ALJ, following which a supplemental hearing was held on June 9, 2005, in Prestonsburg, Kentucky. (Tr. 66-74). On July 26,

2005, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI payments. (Tr. 16–26). This decision became the final decision of the Commissioner when the Appeals Council denied review on March 28, 2006. (Tr. 4-6).

On May 26, 2006, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts

from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 17). At Step 2, the ALJ found Plaintiff's chronic low back pain and depression be severe within the meaning of the regulations. (Tr. 18, 25). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 19-20).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to lift 25 pounds occasionally and 10 pounds frequently; stand and/or walk as well as sit for up to 6 hours each of an 8-hour workday, for up to 2 hours at a time without interruption; occasionally climb, stoop, and crawl; frequently balance, crouch, and kneel; only occasionally reach or push/pull with his upper extremities; and avoid exposure to moving machinery, temperature extremes, humidity, or vibrations. As for his work capacity from a mental standpoint, because the ALJ found Plaintiff to have a poor ability to deal with work stresses, although satisfactory abilities in all other areas, Plaintiff is limited to non-production paced jobs. (Tr. 20, 25). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any of his past relevant work as a self-employed automobile mechanic and salvage yard dealer. (Tr. 23, 25).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in

the national and regional economies, despite his limitations. (Tr. 24). This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (43 years of age at the time of supplemental hearing and so a "younger" individual), education (high school), past relevant work experience (no material transferable skills), and RFC. (Tr. 69). The VE testified that Plaintiff could obtain employment at the light exertional level as a mail clerk, order clerk, or shipping/receiving router; and at the sedentary exertional level as a dispatcher, information clerk, or shipping clerk. (Tr. 70, 24). Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 25).

**C.     Analysis**

Plaintiff raises one challenge in his appeal. He argues the ALJ's decision was not supported by substantial evidence because the ALJ did not comply with 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). That subsection provides, in pertinent part:

> *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision. To obtain information, we will take the following actions.
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

Plaintiff contends the ALJ erred by failing to recontact Dr. Adil Kabir Warsy, an internal medicine specialist who serves as Plaintiff's primary care physician, to obtain additional information and clarification of the doctor's opinions. (Tr. 298-301, Medical Assessment of Ability to do Work-Related Activities (Physical)).  In his decision, the ALJ reviewed and discussed Dr. Warsy's treatment and opinions as follows:

> In reaching my conclusions herein, I am not unmindful of the residual functional capacity assessment completed by Dr. Warsy on February 15, 2005 (Exhibit 14F).  In his assessment, Dr. Warsy found the claimant limited to lifting twenty (20) pounds occasionally and ten (10) pounds frequently; sitting for four (4) hours at one (1) hour intervals, standing and/or walking for four (4) hours at one (1) hour intervals; and the need for three (3) to four (4) unscheduled breaks of one half (½) to one (1) hour in length (Id.).  Dr. Warsy also opined that the claimant would have frequent interference in his attention to task and concentration due to pain and likely would miss greater than four (4) days per month. (Id.).  Although as Dr. Warsy is the claimant's treating physician, which would normally lend considerable weight to his opinions, I am not persuaded by nor do I accept his limitations for a number of reasons.  First, I note that Dr. Warsy is a general practitioner without specialty in either orthopedics or neurology.  Second, though the claimant alleges that he cannot sit for prolonged periods of time, at the hearing he testified that he typically spends his day "sitting around watching television."  Furthermore, excluding an isolated entry on February 25, 2004 of decreased sensation in the right L3 distribution, there are no other objective findings in either his own treatment notes or in the evidence of record to support his diagnosis of lumbar spine radiculopathy (Exhibit 12F).  Additionally, the treatment that Dr. Warsy has rendered has been essentially routine and conservative in nature and I find no indication that he has even suggested further neurological workup.  As such, I find the doctor's assessment to be unfounded and reject the same.

(Tr. 22-23).  Thus, the ALJ did not give weight to Dr. Warsy's opinions because they were not supported by the doctor's care and treatment of Plaintiff as documented (*see* tr. 231-35, treatment summary records from Dr. Rida Mazagri of Tri-State Neuroscience Center, Inc. to Dr. Warsy; tr. 271-74, progress notes of Dr. Warsy; tr. 298-301, physical assessment by Dr. Warsy).  And as the ALJ also remarked, Dr. Warsy does not have the neurologic or

-5-

orthopedic specialization of other physicians who have treated Plaintiff, such as Dr. Mazagri, whose objective clinical findings the ALJ found consistent with the assessment opinions rendered by consultative evaluator Dr. Kip Beard. (*See* tr. 20-21, 231-35, 302-10). That Dr. Warsy is not in a position to offer objective evidence in support of the limitations offered by him is confirmed by Plaintiff's own testimony. Plaintiff testified that he uses no supports or other devices, that no further testing has been ordered, and that his present treatment consists solely of taking medications and status check visits to Dr. Warsy every two to three months. (Tr. 56-57). And in reviewing the record evidence as whole, the ALJ concluded Dr. Warsy's opinions and Plaintiff's testimony about his ability to sit were contradicted by Plaintiff's own testimony that his average day is spent watching television and talking to his wife or visiting with his mother. (Tr. 59).

Thus, the ALJ did not give weight to Dr. Warsy's opinions because they were not supported by the doctor's treatment as documented nor consistent with the other record evidence. Plaintiff contends this was improper because if Dr. Warsy's medical opinions conflicted with the doctor's objective findings in the medical records, the ALJ should have recontacted the doctor to obtain additional information and clarification prior to making a determination about Plaintiff's disability.

The regulations provide that clarification can be sought in various ways, including "... requesting copies of your medical source's records[.]" 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). But sufficient records from Dr. Warsy's had been provided and reviewed by the ALJ, and there was no reference in the record to other treatment, testing, or opinions that Plaintiff had received from Dr. Warsy not already reflected in the record. And Dr.

Warsy's assessment does not in and of itself contain a conflict or ambiguity – it is simply inconsistent with the doctor's own records and the claim record as a whole.

An ALJ may resolve a conflict between a physician's treatment notes and medical report when the report is not based upon objective medical evidence by discounting the report and relying upon the physician's actual treatment notes. *Littlepage v. Chater,* 134 F.3d 371, 1998 WL 24999, *3 (6th Cir.)(unpublished table decision). Moreover, and as argued by the Commissioner here, while an ALJ must recontact the appropriate medical source to resolve a conflict, the ALJ must do so only when the record is insufficient to allow the ALJ to make a determination regarding the claimant's disability. *See* C.F.R. §§ 404.1512(e), 416.912(e). If an ALJ can resolve the conflict by relying on information within the record, the ALJ need not recontact the treating physician. *Id.*

It is not the ALJ's rejection of a treating physician's opinions that triggers the Commissioner's duty to recontact the physician.[1] *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001). Instead, the duty is triggered only upon a finding that the information provided by the physician is inadequate. *Id.*

The *White* case cited by Plaintiff is revealing. There, the ALJ discounted the treating physician's assessment because it was inconsistent with the doctor's own objective findings and the findings of consulting physicians. In addition, the treating physician did not resolve the differences between two inconsistent assessments. The court there found that the Commissioner is not required to recontact a physician whenever an opinion is rejected.

---

[1]Plaintiff is correct that it is not his burden to recontact the doctor to bring forth additional evidence when the record is inadequate. However, the regulations impose a duty on the Commissioner only where the information the physician provides is inadequate to determine whether the claimant is disabled. *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001).

Instead, the duty to recontact the doctor is triggered when the ALJ receives inadequate evidence from the physician to make a disability determination. *Id.* at 908. The court concluded that because the ALJ believed the information he received from the treating physician was adequate for consideration, he was not obligated by the regulation to recontact the physician.

Similarly, the ALJ in the instant matter believed the information he received from Dr. Warsy was adequate for consideration. The ALJ therefore was not required to recontact Dr. Warsy. The record in this case was sufficiently developed to allow the ALJ to reach a determination that Plaintiff can perform a range of light and sedentary work. The record contains information and opinions from treating physicians, consultative examiners, and diagnostic test results, as well as from state agency physician evaluators. In his decision, the ALJ thoroughly discussed the medical and other evidence of record and simply discounted Dr. Warsy's opinions as not being supported by his own treatment records and objective findings, nor the record as a whole. No obligation was triggered requiring the ALJ to recontact Dr. Warsy for clarification or additional information; therefore, the ALJ's determination was supported by substantial evidence.

Finally, even if the ALJ erred by failing to contact Dr. Warsy for clarification or for additional information, any such claimed error was harmless. When a claimant does not "identify [or] offer to present any additional evidence from Claimant's treating physicians showing that Claimant was disabled during the relevant period" then the error is harmless. *Melton v. Comm'r of Social Security,* 178 F.3d 1295, 1999 WL 232700, *5 (6th Cir.)(unpublished table decision). Plaintiff did not offer to present any additional evidence

-8-

from Dr. Warsy identifying any prejudice inflicted by the ALJ's failure to seek a clarification. Therefore, any such claimed error was harmless.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #13) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 25th day of September, 2007.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-106-Mullins.MOO.wpd

-9-